L. Marks' Sons *v.* West Tennessee Grain Co. et al.

[81 South. 162, In Banc.]

Warranties.  *Parties liable.  Assignee of bill of lading.*

Where a non-resident bank at two different times took assignments of drafts with bills of lading attached for two different shipments of grain sold to the same buyer by the same seller, the bank was a co-warrantor with the seller in both transactions in warranting the soundness and merchantable condition of the grain, and the amount received by the bank upon the second draft could be attached in chancery by the buyer for a breach of warranty of soundness and merchantability of the grain in the first shipment.

APPEAL from the the chancery court of Coahoma county.

HON. JOE MAY, Chancellor.

Bill by L. Marks' Sons against the West Tennessee Grain Company praying an attachment of certain funds alleged to be held in the Exchange Bank of Friars Point, Mississippi, and the Bank of Clarksdale, Mississippi, by amended bill the Commercial Bank of Obion, Tennessee, was made a party defendant as co-warrantor. Bill dismissed and complainants appeals. Judgment as to liability rendered and cause reversed and remanded for assessment of damages.

The facts are fully stated in the opinion of the court.

*Black & Mack,* for appellants.

It is our contention and we have considerable confidence in our position that the Commercial Bank was only a collection agency, acting as an agent of the Grain Company, and that when the attachment writ was served on the exchange Bank, that the funds in question were the property of the West Tennessee Grain Company; that it had full power to control said funds and that the Commercial Bank, and the Exchange Bank was merely its agents and did not and could not, in the absence of a special agreement to that effect, have become the owner of the funds attached, as against the West Tennessee Grain Company.

The General Rule is that the title to Commercial Paper placed with the bank for collection remains in the owner of the paper and the bank only performs a service as collecting agent. 5 Cyc. 493.

The endorsement for collection of a draft or check is not a transfer of the title to the endorsee, but merely constitutes it the agent of the endorsor to present the paper, demand and receive payment and remit the proceeds. And this is true, although it appears that the endorsor is credited and the endorsee is charged

with the amount of such paper where it further appears that the endorsee does not become unconditionally responsible for such amount until the draft or check is actually paid. *National Butchers & Drovers Bank* v. *Hubbell,* 15 Am. St. Rep. 515.

In other words all of the circumstances point in the direction that this was simply a case of an endorsement by the Grain Company to the Commercial Bank of the paper for collection, the Grain Company was credited with an amount of the paper less the exchange charge and should the paper be turned down, then it was the understanding that the West Tennessee Grain Company would give the bank a check to take up the paper thus refused.

Merely crediting the amount of the paper to the West Tennessee Grain Company before collection would not transfer the title, as the bank had the right, if the check was turned down to charge same back on its books to the Grain Company thus cancelling the credit so made. See Note at page 307, and 308, 34 Am. Dec.

Again we find that the rule is well settled that the endorsement to a draft or check for the purpose of collection passes the legal title to said paper only to the extent as to enable the endorsee to demand, receive and sue for the money to be paid. The owner may still control the paper unless paid and may intercept the proceeds of it in the hands of the intermediate agent. *Federal National Bank* v. *National Tube Works Co.,* 21 Am. St. Rep. 461.

It is also well settled that banks in taking paper for collection becomes agent of the owner of said paper and is bound to use only reasonable skill and ordinary diligence in handling said paper. 7 S. & M. 592; 7 Howard, page 648. From all of which we submit that the proof shows that the funds attached in this case were not the property of the Commercial Bank, but were the property of West Tennessee Grain Company and that if appellants proved that they sustained damages on

account of the inferior grade of corn, then they should have had a decree for the amount shown, and should have been reimbursed out of the funds attached.

We desire to call the court's attention to the case of *Russell* v. *Smith Grain Co.*, reported on 32 So., at page 287, and in 80 Miss., 688.

This case holds that where a bank buys a draft from the vendor of a car of corn, bill of lading attached, it becomes as to the buyer in the same situation, as its assignor stood and is liable to the buyer who paid the draft for breach of contract in the delivery and quality of corn.

This case is strikingly like the one now before the court, being an attachment in chancery for breach of warranty of quality of corn sold. We desire to call the court's attention also to the case of *Exchange National Bank* v. *Russell*, reported in 32 So. 314, 81 Miss. 169, which seems to be another suit by the same parties and in that case the court holds that where a bank purchases draft with bill of lading attached, for grain shipped and the consignees pay the draft, the bank is liable for damages for defects in quality and for shortage in quantity, of the corn covered by bill of lading but was not liable for damages for the consignor's failure to ship other grain to the consignees under a different contract.

However we think the question of the liability of the Commercial Bank of Obion to appellants as co-warrantors is clearly settled in the case of *Mobile Automobile Co.* v. *R. W. Sturgis & Co.*, reported in 66 So. 205, 107 Miss. 848.

Not only this, but we think it also clear that even if it be conceded that the court had not acquired jurisdiction of the West Tennessee Grain Company for the reason claimed by the appellees and accepted by the Chancellor, still we think clearly the Commercial Bank of Obion has voluntarily come into court, made itself a party defendant to the whole proceedings and cannot

·take refuge behind the proposition that the court acquired no jurisdiction over the West Tennessee Grain Company.

In conclusion we desire to state that in our humble opinion the court below was in error in refusing relief to appellants, and dismissing their bill and that this cause should be reversed and decree rendered here for the amount shown by the proof that appellants sustained in damages on account of the shipment of corn made to them by the West Tennessee Grain Company in April, 1914.

*J. W. Cutrer,* for appellee.

The line of authorities, consisting of *Russel* v. *Smith Grain Company,* 80 Miss. 688; *Exchange National Bank* v. *Russell,* 81 Miss. 169, and *Mobile Automobile Company* v. *R. W. Sturgiss & Company,* 66 So. 205, seem to support the proposition of counsel for appellant that a bank which purchases absolutely a draft with bill of lading attached becomes by such purchase, a co-warrantor of the goods for which the bill of lading is a receipt from the transporting company. We differentiate in the instant case from those cases in that it appears in those cases that there was no contest as to the manner in which the draft was purchased from the consignor. It was admitted in other words, by both sides, that the bank purchased outright absolutely the draft with bill of lading attached. In the instant case it was a disputed questions as to the manner in which the draft was bought, and it devolves upon the complainants, appellants, here to show how the sale was made. We submit that they failed in this particular and that the chancellor, acting upon their failure to prove their case, dismissed their bill.

Finally, although we contend that appellants are not entitled to any relief whatever, we desire to call the court's attention to the evidence with reference to the

damage sustained by appellants.  This testimony will be found in the record at page 96 in the testimony of H. H. Marks, and other witnesses.  It was brought out upon cross-examination that L. Marks' Sons sold part of the corn in controversy to some tenants on their place.  It was also admitted that they sold three hundred and eighteen bushels to the Taylor Grain Company of Memphis, for sixty cents per bushel.  They were unable to account for the balance of the car.  We submit to the court that it is impossible to determine from the evidence in what amount appellants were damaged, if, in fact, they were damaged at all, for this reason, we think that appellants are not entitled to relief even though they might have a cause of action for some damage.  This is added merely as a suggestion to the court, as it is our earnest contention that appellants are entitled to no relief whatever.

In conclusion we submit that, the evidence shows that the Commercial Bank of Obion purchased outright from the West Tennessee Grain Company, the draft drawn upon McCaughn and Corley, the proceeds of which were impounded by the writ of attachment of appellant, and as such purchaser, they are entitled to the proceeds of that draft; second, that the evidence fails absolutely to show the manner in which the draft drawn upon L. Marks' Sons was purchased, and, therefore, the Commercial Bank of Obion, Tennessee cannot be charged as a co-warrantor of the corn out of which this suit arose; third, that the evidence fails to show any damage sustained by appellants, for these reasons, we submit that the findings and decree of the chancellor should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

L. Marks' Sons, a firm composed of S. M. Marks, H. H. Marks, and M. L. Marks, filed a bill in the chancery court, originally against the West Tennessee Grain Com-

pany, a corporation of Tennessee doing business at Obion, Tenn., praying an attachment in chancery of certain funds alleged to be held in the Exchange Bank of Friars Point, Miss., and the Bank of Clarksdale, of Clarksdale, Miss., being the proceeds of a shipment of grain by the defendant, West Tennessee Grain Company, claiming that the West Tennessee Grain Company was indebted to complainants on a shipment of grain warranted to be sound and of merchantable quality, theretofore shipped from the defendant West Tennessee Grain Company to L. Marks' Sons, and paid for before the damaged and unsound condition of the corn was discovered.

The Exchange Bank of Friars Point answered, admitting funds in its possession of four hundred and sixty-four dollars and twenty cents, but suggested that the funds belonged to the Commercial Bank of Obion, Tenn. The Commercial Bank of Obion filed a bill of intervention, claiming that it had bought the draft drawn on McCaughn & Corley of Farrell, Miss., from the West Tennessee Grain Company, and that the funds belonged to the Commercial Bank of Obion. The complainants filed an amended bill, making the Commercial Bank of Obion a party defendant as a co-warrantor of the grain sold to complainants which shipment of grain and bill of lading attached had also been indorsed to the Commercial Bank of Obion by the West Tennessee Grain Company prior to the shipment and delivery of the corn. It was alleged that the grain so shipped was unsound, rotten, and damaged, and by reason of the unsoundness of said grain that complainants were damaged in the sum of three hundred and seventy-one dollars and sixty-nine cents, and judgment was prayed against the Commercial Bank of Obion, as well as the West Tennessee Grain Company. The West Tennessee Grain Company, though duly published for as a nonresident defendant, failed to appear and plead, and a decree *pro confesso* was taken against it. The Commercial Bank of Obion

filed its answer, denying the allegations of the bill so far as it was concerned, and contended that it was not liable, for the reason that the money was collected on the original shipment Company and a settlement between the Grain Company and the bank had been made prior to the institution of this suit. It denied the allegations as to the damaged condition of the corn and as to the shortage claimed.

Complainants introduced proof to show that the corn was damaged from fifty-five per cent. to sixty-six per cent., and that there was a shortage on the amount of grain shipped. One of the parties who weighed the corn for the Grain Company was dead, and the other was not produced on the trial, and the trial court refused to admit the weights and tickets, showing the weights held by the complainants, and made by the absent witness for the complainants.

At the conclusion of the evidence the court found for the defendant the Commercial Bank of Obion, and ordered the funds that had been paid into the court by the Exchange Bank of Friars Point paid over to the Commercial Bank of Obion, and held as to the West Tennessee Grain Company that it had acquired no jurisdiction, and set aside the decree *pro confesso,* and dismissed the bill of complainants, but granted an appeal with supersedeas to this court.

We think it was clearly proven that the original shipment of grain to L. Marks' Sons was unsound and nonmerchantable corn, and that as that draft, with bill of lading attached, as well as the draft attached to the shipment herein attached, was assigned by the West Tennessee Grain Company to the Commercial Bank of Obion, with bill of lading attached, both drafts being payable in Mississippi, and the grain delivered in Mississippi at the time of the payments, brings this suit within the principles of the case of *Mobile Auto Co.* v. *Sturges & Co.,* 107 Miss. 848, 66 So. 205.

In the case of *Searles* v. *Smith Grain Co.*, 80 Miss. 688, 32 So. 287, and the case of *Bank.* v. *Searles*, 81 Miss. 172, 32 So. 314, this court held that a bank sending a draft for grain, with bill of lading attached, payable in Mississippi, was a co-warrantor with the shipper or seller of the grain, warranting the soundness and merchantable condition, and that this obligation constituted a debt to the extent of the loss resulting from the unsound and nonmerchantable condition of the grain, for which the bank was liable to the payee of the draft—that is, the consignee of the grain—and such debt would sustain an attachment in chancery in the courts of this state.

We think the present case cannot be distinguished in principle from the cases cited, and that the learned court below erred in not entering a decree for the loss sustained, with interest thereon from the date of the delivery of the grain. The case is accordingly reversed and remanded for assessment of damages alone. Judgment as to liability is rendered here.

Reversed and remanded for assessment of damages.

*Reversed and remanded.*