SMITH *v.* ELLIS.*

(Division B.    April 5, 1926.)

[107 So. 669.    No. 25594.]

1. CONTRACTS. *Note given swindler and sold to plaintiff, also payee's victim, held not subject to defense that it was given pursuant to conspiracy to violate law or public policy of another state.*

A swindler represented that lumber company desired timber on tract of public land in New Mexico, but could only purchase one

section; that persons buying section or less could resell timber to lumber company; and that state required cash payment of thirty-four dollars and fifty cents for each forty acres, balance to be paid in deferred payments running over thirty years. Defendant gave swindler his note for initial payment for half section, which note was immediately transferred to plaintiff. *Held*, that action on note could not be defeated on ground that consideration therefor was unlawful conspiracy to acquire state lands in violation of law and public policy; it not appearing that there was any such conspiracy, or that plaintiff had knowledge of fraud.

2. BILLS AND NOTES. *That consideration of note is executory contract does not prevent one being holder in due course (Uniform Negotiable Instruments Act, sections 52, 55 [Hemingway's Code, sections 2630, 2633.]).*

Knowledge of holder of note negotiable in form that it was given in consideration of payee's executory contract does not deprive him of character of holder in due course, under Uniform Negotiable Instruments Act, sections 52, 55 (Hemingway's Code, sections 2630, 2633); his acquisition being before, or without knowledge of, breach of such contract.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, p. 465, n. 21; p. 510, n. 79, 80 New; p. 984, n. 49; p. 1047, n. 10; Contracts, 13CJ, p. 460, n. 36; Evidence, 23CJ, p. 62, n. 53; Failure of executory consideration for bill or note as affecting purchaser with knowledge of the character of the consideration see notes in 46 L. R. A. (N. S.) 861; L. R. A. 1918F, 1018; 3 A. L. R. 987; 3 R. C. L., p. 1067; 1 R. C. L. Supp., p. 969; 4 R. C. L. Supp., p. 234; 5 R. C. L. Supp., p. 217.

APPEAL from circuit court of Lauderdale county.
HON. R. M. BOURDEAUX, Judge.
Action by W. E. Ellis against J. J. Smith. Judgment for plaintiff, and defendant appeals. Affirmed.

*Amis & Dunn*, for appellant.

The court erred in directing a verdict and judgment in favor of the appellee under the facts and circumstances in evidence.

I.  The weight of authority seems to be to the effect that if the transaction giving rise to a note was merely illegal and forbidden by law, the instrument will not be held void in the hands of a *bona-fide* holder in due course. This is true where there is no statute declaring such note to be void.  Where by statute the note is declared to be void, an innocent holder in due course cannot enforce payment.  3 R. C. L., p. 1017; *Elkin Henson Grain Co.* v. *White,* 134 Miss. 203.  But while illegality of consideration of a note is a good defense in a suit between the original parties, it does not follow that a contract made in violation of law, common or statutory, is void in the hands of a *bona-fide* holder in due course, where the contract in form is a negotiable instrument.  We submit, however, that where the assignee has knowledge of the illegality of the consideration, mere negotiable form of the instrument will not protect him.  See sections 55 N. I. L. (section 2633, Hemingway's Code) and 52 N. I. L. (section 2630, Hemingway's Code).

There can be no doubt that Brecker's title to the note was defective: (1) Because it was obtained by fraud—this is admitted; (2) because the consideration therefor was illegal—illegal because it was taken in connection with, and as a part of, a transaction involving an unlawful conspiracy to defraud the state of New Mexico or the government of the United States.  The appellee had knowledge of the unlawful conspiracy and had knowledge that the consideration for the note was based upon a transaction illegal in the nature; and he, therefore, is precluded from claiming to be holder in due course under the terms of the very statute which he invokes.  The effect is to render the note non-negotiable, the consideration thereof illegal and the instrument non-enforcible.

II.  Although the court below, admitted that the appellee had knowledge of the agreement between the appellant and Brecker to the effect that the note was not to be paid unless and until the appellant has obtained such

title to the supposed property as would enable him to sell the timber thereon and rights-of-way thereover, it held that he was not thereby precluded from insisting that he was an innocent holder in due course for the reason that such evidence was incompetent on the theory that the effect thereof would be to contradict by parole evidence the written contract evidenced by the note, and that the holder of a note, negotiable in form, under our Negotiable Instrument Law, is protected by the terms and conditions written in the note and cannot be affected by any agreement or stipulations respecting the instrument not incorporated therein. The trial judge was in error here. No such rule is deducible from the provisions of the Negotiable Instrument Law.

Let us assume that the appellee knew of the agreement that the note was not to be paid except upon the happening of a contingency, how is he, in view of the provisions of section 52, Negotiable Instrument Law, in any better situation or position than the original payee? The question turns upon whether the holder had notice of the condition or contingencies which renders the title to the payee defective.

The case most resembling the one at bar is *Sims et al.* v. *Kline,* 104 So. 85. It is the clear holding of the court in this case that the question as to whether a note negotiable in form, but which, by agreement between the original parties is not to be paid except upon the happening of some contingency and upon some contingency is not to be paid at all, in a suit thereon by an assigee where it is claimed that the assignee had notice of such collateral agreement, and the fact of such notice is controverted, the question is for the jury; and, of course, if such notice be established by the verdict, the defense is good in law. The case seems to be so clearly an authority on this phase of the case at bar that we feel that it is not necessary for us to cite authorities from other states on the point.

*E. L. Snow* and *J. A. Covington,* for appellee.

We contend that appellee, Ellis, is a holder in due course; and as such, his right to recover is not affected by the fraud of the payee, the failure of consideration or the breach of a contemporaneous contract executed simultaneously with the giving of the note; that evidence of an extraneous oral agreement whereby the note was never to be paid is inadmissible and was properly excluded; and that even if such evidence is admissible, it cannot affect the right to recover. See section 52 N. I. L. (section 2630, Hemingway's Code), and also 33 Am. Dec. 432.

Appellee admits that he had knowledge of the consideration, but denies that the consideration had failed at the time of his purchase of the note or that he had knowledge that it would fail. These allegations are not contradicted by appellant. He merely contends that appellee had knowledge of an executory contract given as consideration of the note and knowledge of the terms of an extraneous oral agreement whereby the note was never to be paid at all. It was proved by the evidence that there had never been a breach of the contract at the time the note was executed and transferred to Ellis.

The fact that the purchaser knew that the consideration was future and contingent and that there might be off-sets against it will not affect his standing as a holder in due course.. This doctrine is recited in C. J., p. 509, par. 718. See, also, *Whitehead* v. *Purdy,* 137 N. W. 684; *Piedmont-Carolina R. R. Co.* v. *Shaw,* 223 Fed. 973; *Sampson* v. *Hatcher,* 134 A. S. R. 989; *Spires* v. *Jones,* 101 So. 753.

It is urged by appellant's counsel that the consideration for which the note was given was manifestly illegal. We cannot bring ourselves to this view inasmuch as the testimony does not show that Ellis had any knowledge of such illegality. Brecker represented that this land could not be bought by his corporation, nor by any one, in tracts larger than one section. This is a reasonable statute and we have upon our own statute books a limitation upon the authority of corporations to acquire lands

for certain purposes. Brecker claimed to be here assisting individuals in purchasing this land in small tracts in order to comply with the laws of New Mexico and the record shows that all parties understood that this was the only legal way in which the proposition could be handled.

We believe that no well-considered case can be found in which a collateral, contemporaneous agreement, providing that a note should not be paid in the event an executory contract, which is the consideration for the note, should not be performed, has been allowed to defeat the negotiability in the hands of an endorsee, though he had notice of such agreement. See rule as recited in *Miller* v. *Ottaway,* 21 A. S. R. 513; 1 Parsons on Bills and Notes, p. 261; Teiderman on Commercial Paper, sec. 42.

We do not think the views of counsel for the appellant on the case of *Sims et al.* v. *Kline,* are well taken.

ANDERSON, J., delivered the opinion of the court.

Appellee, W. E. Ellis, brought this action in the circuit court of Lauderdale county against appellant, J. J. Smith, upon a promissory note for two hundred seventy-six dollars and forty-eight cents. At the conclusion of the evidence at the request of appellee, the trial court directed a verdict in his favor for the amount of the note sued on, with interest and costs. A judgment was accordingly entered, from which judgment appellant prosecutes this appeal.

There was no conflict in the material evidence in the case; therefore there was no issue of fact for the jury to try. There was presented only a question of law, the solution of which meant a directed verdict and judgment for one party or the other. The trial court solved the question in appellee's favor.

The controlling facts out of which the question arose were as follows: One E. C. Brecker, a highly expert crook and swindler, appeared in Meridian. He repre-

142 Miss.—29.

sented to appellant and many others in that city whom he took to be persons of some means, including the appellee in this case, that there existed in the state of New Mexico a large area of public lands, with valuable timber thereon; that he was connected in some way with the McVey Coal & Lumber Company, a large sawmill concern in New Mexico; that this sawmill company desired to acquire the timber upon these public lands, and rights of way through the lands for the purpose of constructing logging railroads for the removal of the timber from the lands to their mill; that under the laws of New Mexico only one section of this land could be acquired by a single purchaser, and therefore under the law the mill company was not permitted to purchase the timber on the lands and rights of way thereon for logging roads. Brecker's scheme, which he put before appellant and appellee, as well as others in the city of Meridian, was to induce a number of persons to purchase these lands in quantities ranging from forty-acre tracts up to section tracts, with the understanding and promise on his part that, when they acquired title to the lands, the timber thereon and rights of way thereover for logging roads to remove the timber would be purchased by the sawmill company. He represented that there was standing on the lands an average of several thousand feet of merchantable timber per acre, for which the sawmill company would, within thirty or forty days after the purchasers of the lands had acquired conveyance thereto, purchase the timber and rights of way from them, paying cash therefor at six dollars per thousand for the timber, which would more than pay for the land. Brecker claimed that the state of New Mexico required a cash payment of thirty-four dollars and fifty cents by the purchaser of each forty acres of the land, the balance to be paid in deferred payments running over a period of thirty years. When he found a purchaser with the cash to pay the first installment, he took that; if the purchaser was not able to pay the first installment in cash, he took his promis-

sory note, payable "to the order of E. C. Brecker," maturing approximately forty-five days after its date. When notes were thus taken, Brecker assured the purchaser that before the maturity of the note his subdivision of land would be located and he would acquire such title thereto as would enable him to sell the sawmill company the timber thereon and rights of way thereover for logging roads, from the proceeds of which sale he would at least acquire a sufficient sum to pay the purchase price of the land, and therefore would never have to pay his note.

Appellant and appellee were both victims of this fraudulent scheme of Brecker. Appellant purchased a half section of the land; the initial payment being two hundred seventy-six dollars and forty cents, the amount of the note sued on in this case. At the time of the taking of these notes, Brecker gave each purchaser a contract setting out the consideration for the notes, and containing, among other provisions, the following:

"It is understood that, in case the undersigned should fail to secure a good and sufficient title to the above-mentioned lands for the said  .  .  .  all money paid under this contract shall be returned on demand without process of law."

These contracts were signed by Brecker. Both appellant and appellee, in the transactions had by them with Brecker, received from him a contract setting out the consideration for the notes they executed for the initial payment, and containing the stipulation above quoted.

The upshot of the whole business was, so far as Brecker was concerned, as soon as he had filched out of his victims in the city of Meridian all that he thought he could get, he left the country. But his victims were not willing that he should go unwhipped of justice; so they ascertained his whereabouts and brought him back to Lauderdale county, in this state, in which the city of Meridian is situated, where he was indicted and convicted of a felony growing out of his fraudulent scheme (obtaining

money under false pretenses), and sent to the penitentiary.

Both the appellant and appellee were car repairers for railroads entering Meridian, and knew each other. Appellant was unable to make the initial payment on the half section of land purchased by him. Appellee was able to furnish appellant the money for that purpose and was willing to do so. Brecker, appellant, and appellee got together, and it was agreed between them that appellant should execute and deliver to Brecker, which he did, the note sued on in this case, which, in form, is negotiable under our Uniform Negotiable Instruments Act. By the terms of the note appellant promised to pay forty-five days after the date of the note, "to the order of E. C. Brecker," two hundred seventy-six dollars and forty-eight cents at the First National Bank in Meridian, for value received, with interest at the rate of eight per cent. per annum after maturity. On the same day the note was executed by appellant and delivered to Brecker, and substantially as a part of the same transaction, appellee purchased the note from Brecker, paying therefor its face value in cash. Brecker indorsed the note and delivered it to appellee. At maturity appellant refused to pay the note, and thereupon appellee brought this action to recover the face of the note, with interest and attorney's fee.

Appellant defends on two grounds: First, that the evidence shows without conflict that appellee, when he purchased the note, had full knowledge of Brecker's fraudulent scheme, which was the consideration for the note, which scheme amounted to an unlawful and corrupt conspiracy against the state of New Mexico, in that it was an attempt to acquire the public lands of said state in a manner violative of its laws and public policy; and, second, that the consideration of the note was an executory agreement by the payee, Brecker, namely, the written contract signed by the latter and delivered to appellant at the time of the execution of the note, in connection

with Brecker's verbal promise that the note would never have to be paid, of which contract and verbal promise appellee had knowledge at the time of his purchase of the note, which consideration had failed, and that under the Uniform Negotiable Instruments Act appellant was entitled to defend against the collection of the note on that ground. In other words, that appellee was in no better position to recover on the note than Brecker would have been if the latter had sued. .

Appellee's contention is that he is the holder in due course, and under the Uniform Negotiable Instruments Act. is protected against any defense which appellant might have had against Brecker.

Section 52 of the Uniform Negotiable Instruments Act (section 2630 of Hemingway's Code), defines a holder in due course as a holder who has taken the instrument under the following conditions: That it is complete and regular upon its face; that he became the holder of it before it was due, and without notice that it had been previously dishonored, if such was the fact; that he took it in good faith for value; that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Section 55 of the Uniform Negotiable Instruments Act (section 2633, Hemingway's Code), gives a definition of what it takes to constitute a defective title in the person who negotiates the instrument. It provides that the title is defective within the meaning of the act when the person who negotiates the instrument obtained it or any signature thereto, by fraud, duress, or force of fear or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under circumstances amounting to fraud.

It was agreed in the record between the parties that the note in question was procured by Brecker through fraud; however, that fact was also shown beyond question by the evidence. Brecker's whole scheme was a creature of the imagination, gotten up by him to defraud

his victims. But there is an entire absence of any evidence to connect appellee with the fraudulent scheme. Both appellant and appellee were innocent victims of Brecker's fraudulent transactions; they were caught in the same trap—one knew as little about it as the others. No one knew of Brecker's purposes until he had fled the country, and that occurred some time after appellee purchased the note in question. Appellant argues that the note was fraudulent and void because its consideration grew out of a conspiracy between Brecker and appellee to violate the laws and public policy of New Mexico in acquiring the lands involved, which Brecker represented belonged to that state. In the first place, if there was such a conspiracy between Brecker and appellee, appellant was a party to it; he knew as much about it as appellee did. In the next place, there was no conspiracy shown to violate the laws and public policy of New Mexico. There is nothing in the record in this case to show that the public lands of New Mexico could not be purchased under the laws of that state in the exact manner that Brecker represented they could be purchased. Brecker's plan did not involve the purchase of lands by others for the sawmill company. The purchasers were to become owners of the lands outright, with a view of selling the timber thereon to the sawmill company. Appellant does not refer to any constitutional provision or law of the state of New Mexico that would have been violated in the purchase of these lands in the manner proposed by Brecker.

The evidence shows without conflict that appellee had no part in the fraud perpetrated by Brecker in procuring the note in question, and it fails to show that appellee had any knowledge of such fraud when he purchased the note, or of any facts that would have reasonably led him, if pursued, to a knowledge thereof. We think, therefore, that appellant's first contention is not well founded.

Considering now appellant's second proposition: The evidence does show, as contended by appellant, that ap-

pellee had knowledge of the collateral contract which was executed by Brecker at the same time appellant executed the note involved; in fact, appellee admitted that fact as a witness in his own behalf. The evidence further fairly tends to show that appellee had knowledge of the promise made to appellant by Brecker that the former would not be called on to pay the note, because before its due date appellant would have acquired title to the land and sold the timber thereon to the mill company for at least a sufficient sum to pay the note.

The question therefore is whether knowledge, by the holder of a note negotiable in form, that the note was given in consideration of an executory agreement by the payee, will deprive the holder of his character as a holder in due course. Putting the question differently, Does the holder, with knowledge of such an executory contract, take the note subject to the provisions of the contract? The authorities seem to be in accord in answering this question in the negative. Knowledge of the consideration of a bill or note is not notice of a subsequent failure of the consideration. Knowledge of the holder that the note was given in consideration of an executory contract by the payee does not deprive the holder of his character as a holder in due course, because of the fact that the payee fails to perform the contract, provided the holder had no knowledge of the breach prior to his acquisition of the instrument. And, where the breach of the collateral contract takes place after the holder has acquired the instrument for a greater reason, the holder is protected. There is a discussion of this question in 8 C. J., at pages 509 and 510, section 718, where the cases bearing on the question are collated by the author.

When appellant negotiated the note, thereby putting it in circulation, he took the chances on Brecker complying with his executory contract. If the law were otherwise, a very large proportion of bills and notes would be rendered practically valueless in the commercial

world, for it is a matter of common knowledge that a considerable part of commercial paper in circulation has for its consideration executory agreements by the payees. Should the maker, who dealt with the payee and trusted him, suffer the loss, or the holder in due course, who often has had no dealings with the payee and does not even know him? We think the former, upon the ground of justice, as well as moral right.

Appellate cites *Sims* v. *Kline,* 104 So. 85, 139 Miss. 246, as sustaining his contention. We do not so understand that case. The questions here involved were not involved in that case.

*Affirmed.*