COMMERCIAL CREDIT CO. *v.* SUMMERS.

(Division B. June 3, 1929.)

[122 So. 541. No. 27528.]

Currie, *Stevens & Currie,* of Hattiesburg, for appellant.

*Currie & Currie* and *A. A. Hearst,* all of Hattiesburg, for appellee.

504

ETHRIDGE, P. J., delivered the opinion of the court.

The Commercial Credit Company, a corporation of Louisiana, sued out a writ of replevin for the possession of one automobile, 1924 model Hupmobile touring, motor R, series 127192, motor No. 127623, of the value of three hundred twenty-five dollars, the property of the Commercial Credit Company, alléged to be wrongfully detained by Dr. Summers.

The writ of replevin was issued, and the car was seized under the said writ, and Dr. Summers gave a forthcoming bond. A declaration was filed in replevin, and the defendant appeared and filed a plea of general issue, not guilty, and filed a motion for a bill of particulars, to require the plaintiff to file with its declaration a bill of particulars showing how, and in what manner, and from what source, and what interest it claimed in the same, and whether the same be equitable or legal interest, and from whom, and how, and upon what consideration it claimed to have acquired the said property, etc. The plaintiff thereupon filed a bill of particulars, setting up that on the 21st day of April, 1924, the United Motor Company, of Hattiesburg, Miss., and the defendant herein, Dr. F. L. Summers, entered into a conditional sale agreement, under the terms, conditions, and stipulations of which the United Motor Company, designated as seller in said agreement, in consideration of the payments, agreements, and conditions contained in said agreement,

which on the part of the defendant, designated as the buyer in said agreement, were to be made, done, and performed by the defendant, delivered to him, and agreed to sell, and the buyer agreed to buy, upon the conditions recited in said agreement.

The note for the purchase money of the car, and the agreement reserving title retained by the motor company was made exhibit to the bills of particulars, and it was alleged that the plaintiff, the Commercial Credit Company, was the purchaser for value of the security of the said notes, without notice of any defense or claim on the part of the defendant. The note so made an exhibit to the bill of particulars reads as follows:

"Hattiesburg, Miss.    Date April 21, 1924.
"$957.34    Address 615 Bay Street.

"For value received, at the time or times stated in the schedule of payments hereon, I, we, promise to pay to the order of United Motor Company nine hundred and fifty-seven and 34/100 dollars, with exchange on New York, at the office of Commerical Credit Company, Inc., New Orleans, La., with interest after maturity at the highest legal contract rate.

"This note, including all installments thereof, of even date herewith, is identified with conditional sale agreement covering a certain motor vehicle and certain personal property and equipment thereon. Failure to pay this note, or any of the installments thereof, when due, shall at the option of the holder hereof mature all of said installments then unpaid. In the event that an attorney be employed to collect or attempt to collect this note, or any installment thereof, by suit or otherwise, or to preserve or protect the property described in the aforesaid conditional sale, the parties hereto agree to pay all cost incurred, including a reasonable attorney's fee, which shall not be less than fifteen per cent of the amount then due, consenting that suit be brought hereon in any county

in the state wherein the holder hereof might elect to sue. The parties hereto, whether maker, surety, or indorser, hereby waive presentment, demand, protest, and notice of nonpayment, and also waive all rights of exemption which they have or may have under the Constitution and laws of this or any other state or of the United States, and the indorsers and sureties hereby agree to extensions of the time of payment hereof without notice to them of such extensions.

"No. 77501 [Signed] F. L. SUMMERS.

"[Revenue stamp affixed.]

"Schedule of Payments.

| "Months after Date. | | Months after Date. | |
|---|---|---|---|
| "1 mo. | $79.77 | 7 mos. | $79.77 |
| "2 mos. | 79.77 | 8 mos. | 79.77 |
| "3 mos. | 79.77 | 9 mos. | 79.77 |
| "4 mos. | 79.77 | 10 mos. | 79.77 |
| "5 mos. | 79.77 | 11 mos. | 79.77 |
| "6 mos. | 79.77 | 12 mos. | 79.87" |

To secure the payment of the several payments provided in said note, the contract or bill of particulars reserving the title as security for payment was made and signed by the United Motor Company, dealer, and by F. L. Summers, buyer. In this contract it was agreed, among other things, that "the buyer agrees and acknowledges that the within contract covers all conditions and agreements between the parties, and that the loss, injury, or destruction of said car shall not release said buyer from payment as provided herein. Buyer hereby acknowledges receipt of and accepts the car, having first examined and tested the same and found same in sound and first-class condition, and agrees to keep the car insured against loss by fire and theft with insurance companies acceptable to the seller, for not less than the amount owing, and until fully paid, payable to and to protect the interest of the seller, and the seller may place,

continue, and renew said insurance for the buyer at the buyer's expense, if the seller so elects.''

The contract so made was placed of record in the office of the chancery clerk, and on the following day, the 23d day of April, it was assigned to the Commercial Credit Company, who sent a check to the United Motor Company for the amount of the note, less the discount, which check was paid.

The defendant, by way of answer to the bill of particulars, required to be filed as above stated, admitted that he purchased the car from the United Motor Company, of Hattiesburg, under condition of sale agreement. He further set up that the place of business of the United Motor Company was at Hattiesburg, and that during the night, when the place of business was poorly lighted, and when he could not examine a car thoroughly, he went there and stated to a representative of the United Motor Company that he desired to buy a new automobile, and that the said representative then and there showed him the car which he purchased, representing that the said car was a perfectly new car and was a 1924 model, the latest model of such car, and that he (the defendant), on account of poor lights, could not thoroughly examine the car, but relied upon statements of reference made to the said car, made by the representative of the United Motor Company; but the fact was that the car so purchased was a secondhand car, had been used by the motor company for some time, and had been driven approximately fifteen thousand miles, which is about one-half of the life of a car, and that the said car had been used in taxi service and transfer business, and was an old motor car, greatly worn, etc.; that as soon as he found out these facts he went to the United Motor Company and offered to return the car, and they agreed either to repair the car, so as to make it in effect a new car, or to replace the same with a new car, and that he had often demanded of the United Motor Company that they perform their

agreement in this respect, but they had refused to do so; that because of these facts the car was of far less value than he had already paid upon it. It appears from the record that Summers had paid a cash payment and given a note with monthly payments covering the period of one year, totaling $957.34, and that he had paid all of these, except the last three of the monthly payments.

The testimony for the plaintiffs showed that they purchased the note from the United Motor Company at something like less than nine hundred dollars before any of the payments had become due, and the note and contract had been assigned to them after the said sale, without notice of any defenses existing between the purchaser, Dr. Summers, and the United Motor Company. Dr. Summers' testimony tended to sustain his contention, and the person who repaired the car for Dr. Summers also supported his statement that the car had been used, and parts were badly worn, and that it was not in good condition, and was not a new car. This testimony was received over objection, and at the close of the evidence the plaintiff requested an instruction reading as follows: "The court instructs the jury to find for the plaintiff, and to award it the immediate possession of the property; to find and assess the interest of the plaintiff in the property in controversy, and to find and assess the value of the property in controversy." The instruction was refused.

The court granted the defendant the following instruction, which is assigned as error: "The court instructs the jury, for the defendant, that if you believe from the evidence in the case that the United Motor Company sold the automobile in question to the defendant, Dr. Summers, and if you further believe from the evidence that the United Motor Company fraudulently represented to the defendant that said automobile was a new Hup automobile, and charged therefor the price of a new automobile of the model and make of the car in question, and

if you further believe from the evidence that the automobile so sold was not a new automobile, but was a used and secondhand car, and if you further believe from the evidence that said car had been used to the extent that its value had been depreciated, and if you further believe from the evidence that the United Motor Company. acting by and through its agent, R. M. Pooley, making the sale, knew the condition of said automobile, and that it was not of the value of a new car, and if you further believe from the evidence that the defendant relied upon said representations made when said car was purchased, and if you further believe from the evidence that the defendant, Dr. Summers, has paid the full contract price, less what you may find from the evidence is a reasonable damage, if any, to the car from the use of the same before it was sold to the defendant, then your verdict should be for the defendant, but the burden of proving the foregoing facts is upon the defendant.''

The jury returned a verdict for the defendant, from which this appeal is prosecuted. We think the plaintiff was entitled to the instruction requested and refused, above set out, and that the defendant had no defense as against the purchaser of the note and contract, and the defendant's instruction was error.

The defendant contends that the judgment of the court below was correct, under authority of *L. Marks & Sons v. West Tennessee Grain Co. et al.,* 119 Miss. 465, 81 So. 162, and other cases referred to in that opinion. We do not think this authority is controlling here. In that case, before the property embraced in the contract was delivered, a draft with bill of lading attached was assigned to the bank, and it was held that the bank was a cowarrantor of the soundness, etc., of the property there involved. The case is different here. The contract had been completed and the automobile delivered to Dr. Summers, and the note and the security for the payment of the note delivered to the United Motor Company.

Thereafter the United Motor Company, for value, assigned the note and contract to the plaintiff, who took it as a *bona-fide* purchaser. We think the case is controlled by *Smith* v. *Ellis,* 142 Miss. 444, 107 So. 669, and *Mc-Ange* v. *Falls,* 145 Miss. 471, 110 So. 840. In *Smith* v. *Ellis,* the court, after stating the transactions there involved, in which a person who had loaned another money to buy property in violation of the law of another state, in such other state, and belonging to the state, and that the defendant sought to set up the defense that he was not a *bona-fide* lender, but that he loaned the money with knowledge of the illegal purpose for which it was to be used, in procuring unlawfully the timber there involved, said:

"The question, therefore, is whether knowledge, by the holder of a note negotiable in form, that the note was given in consideration of an executory agreement by the payee, will deprive the holder of his character as a holder in due course. Putting the question differently: Does the holder, with knowledge of such an executory contract, take the note subject to the provisions of the contract? The authorities seem to be in accord in answering this question in the negative. Knowledge of the consideration of a bill or note is not notice of a subsequent failure of the consideration. Knowledge of the holder that the note was given in consideration of an executory contract by the payee does not deprive the holder of his character as a holder in due course, because of the fact that the payee fails to perform the contract, provided the holder had no knowledge of the breach prior to his acquisition of the instrument. And where the breach of the collateral contract takes place after the holder has acquired the instrument, for a greater reason the holder is protected. There is a discussion of this question in 8 C. J. at pages 509 and 510, section 718, where the cases bearing on the question are collated by the author."

In *McAnge* v. *Fall, supra,* it was held that knowledge of the purchaser of the note for value that stock for which the note was executed was worthless at the time of the purchase ought not to constitute a defense, under Negotiable Instruments Act, sections 56, 58 (Hemingway's Code of 1917, sections 2634, 2636), where evidence showed that stock had a value at time note was executed.

It is argued by the appellee that the defenses of the purchaser of the negotiable instrument, conceding the facts to be so involved in this suit, do not apply to the replevin suit brought for the possession of property, where title is reserved to secure the payment, the title being reserved as security for the payment, or the title is retained until the purchase money is paid, and where the holder of the paper, or note, brings a suit to possess the property to enforce the payment of the debt. We think that the plaintiff's right as *bona-fide* purchaser of the note and contract gives the plaintiff the right to the security free from any defenses existing between the original parties to the sale. It is a familiar rule of law that the assignment of a debt or note carries with it the security for its payment, and the purchaser of the note, as an incident to his purchase, acquires the right to resort to the security for the payment of his debt. We think, therefore, that the county court and the circuit court on appeal were in error in upholding the verdict of the jury and entering judgment thereupon for the defendant, and that they should have directed verdict and judgment for the plaintiff. The judgment will therefore be reversed, and the cause remanded.

*Reversed and remanded.*