J. W. McNEES MOTOR CO. v. BRUMFIELD.

(Division B. March 17, 1930. Suggestion of Error Overruled, April 21, 1930.)

[126 So. 898. No. 28433.]

Williams & Hunt and **W. G. McLain**, all of McComb, for appellant.

**C. T. Gordon,** of Liberty, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

H. A. Brumfield was complainant in the court below, and filed a bill in the chancery court of Pike county to cancel a certain contract given by him to the J. W. McNees Motor Company for the purchase of an automobile, and against the General Motors Acceptance Corporation, a corporation which had purchased the contract from the McNees Motor Company, and which was alleged to be an agency of the General Motors Company. It was alleged that the General Motors Acceptance Corporation and the J. W. McNees Motor Company were both dominated and were instrumentalities of the General Motors Company for the selling of automobiles. It was alleged that the contract given the J. W. McNees Motor Company was procured by fraud and misrepresentation of material facts, and was wholly void and unenforceable,

the fraud alleged to consist of a representation by the agent of the McNees Motor Company that the car purchased was practically a new car, and had been used only by the said agent of the McNees Motor Company as his personal car, and that it had not been run more than two thousand one hundred miles, and that it was in perfect mechanical condition, and that the complainant relied upon the representations · aforesaid because he was not skilled in judging cars, especially used cars, and that he did not desire to purchase a used car at all, but on · the representations made believed that he was getting a practically new car in perfect mechanical condition.

The McNees Motor Company denied generally the allegations of the bill with reference to fraud, and denied that the several defendants were interrelated in such manner as to constitute practically one concern, or that the J. W. McNees Motor Company was the agent of the General Motors Company, or the General Motors Acceptance Corporation. It denied that the complainant had been defrauded in said trade, and denied that the car was not in good mechanical condition.

The General Motors Acceptance Corporation filed a plea in which it was alleged that it was bona fide purchaser for value on said contract without notice of any defects in the said instrument, and that it had no knowledge of any defects in the car sold. The contract referred to reads as follows:

"Conditional Sale Contract.

"The undersigned seller hereby sells, and the undersigned purchaser hereby purchases, subject to the terms and conditions hereinafter set forth, the following property, complete with standard attachments and equipment, delivery and acceptance of which is hereby acknowledged by purchaser, viz.:

| New or used | Make Trade Name | Type of Body If Trk, Give Tonnage | Model Letter or Number | Mtr. | No. Mfg. Serial No. |
|---|---|---|---|---|---|
| One Used | Oakland | Landau Sedan | L. | | 125765-122339-54 |

"For five hundred eight dollars on or before delivery, leaving a Deferred Balance of eight hundred eighty-eight dollars payable at the office of Genral Motors Acceptance Corporation, in twelve equal successive monthly installments on the same day of each month and commencing one month from the date hereof, or as indicated in Schedule of Payments below, with interest thereon after maturity at the highest lawful contract rate, and if this contract be placed with an attorney for collection, fifteen per cent of the amount due hereunder as attorney's fees, or if prohibited, the amount prescribed by law.

Schedule of Payments.

$74.00 1 Mo. hereafter

$——— 2 Mo. hereafter

$——— 3 Mo. hereafter

$——— 4 Mo. hereafter

$——— 5 Mo. hereafter

$——— 6 Mo. hereafter

$——— 7 Mos. hereafter

$——— 8 Mos. hereafter

$——— 9 Mos. hereafter

$——— 10 Mos. hereafter

$——— 10 Mos. hereafter

$——— 11 Mos. hereafter

$——— 12 Mos. hereafter

1. Title to said property shall not pass to the purchaser until said amount is fully paid in cash. If the purchaser is a resident of New Jersey, a regular bill of sale will be given to purchaser immediately upon completion of payments, in conformity with chapter 168, P. L. 1919, New Jersey Statutes; the bill of sale thus to be delivered to the purchaser in conformity with chapter 168, P. L. 1919, shall be the original bill of sale with all assignments of subsequent o w n e r ship notes thereon.

"2. No transfer, renewal, extension or assignment of this contract, or any interest thereunder, or loss, injury or destruction of said property shall release the purchaser from his obligation hereunder; the assignee shall be entitled to all the rights of the seller.

"3. In the event the purchaser defaults on any payment or fails to comply with any condition of this contract or a proceeding in bankruptcy, receivership or insolvency be instituted against the purchaser or his property, or the seller deems the property in danger of misuse or confiscation, the full amount shall, at the election of the seller, be immediately due and payable, and purchaser hereby authorizes any attorney-at-law to appear for said purchaser in any court of record in the United States, waive the issue and service of process, and confess judgment against said purchaser for the amount due hereunder in favor of the seller or assignee.

"4. No warranties have been made by the seller unless endorsed hereon in writing.

"5. The purchaser shall keep said property free of all taxes, liens and encumbrances; shall not use same illegally, improperly or for hire; shall not remove same from the state without permission of the seller; shall not transfer any interest in this contract or said property. The proceeds of any insurance, whether paid by reason of loss, injury, return premium or otherwise, shall be applied toward the replacement of the property or payment of this obligation, at the option of the seller. Seller may insure said property against fire and theft to properly protect purchaser, seller and seller's assignee. The purchaser agrees to pay the premium upon demand and that on failure to do so, payment of said premium shall be secured by this contract.

"6. Time is of the essence of this contract, and if the purchaser default in complying with the terms hereof, or

the seller deems the property in danger of misuse or confiscation, the seller or any sheriff or other officer of the law may take immediate possession of said property without demand (possession after default being unlawful) including any equipment or accessories thereto; and for this purpose the seller may enter upon the premises where said property may be and remove same. The seller may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to the purchaser (if given, notice by mail to address below being sufficient) with or without having such property at the place of sale, and upon such terms and in such manner as the seller may determine, the seller may bid at any public sale, from the proceeds of any such sale, the seller shall deduct all expenses for retaking, repairing and selling such property, including a reasonable attorney's fee. The balance thereof shall be applied to the amount due; any surplus shall be paid over to the purchaser; in case of deficiency the purchaser shall pay the same with interest and the purchaser does hereby confess judgment in the amount of such deficiency.

"7. Seller shall have the right to enforce one or more remedies hereunder, successively or concurrently, and such action shall not operate to estop or prevent the seller from pursuing any further remedy which he may have hereunder, and any repossession or retaking or sale of the property pursuant to the terms hereof shall not operate to release the purchaser until full payment has been made in cash. Purchaser hereby waives the right to remove any legal action from the court originally acquiring jurisdiction and waives all homestead and other property exemption laws. Any provision of this contract prohibited by law of any state shall as to said state be ineffective to the extent of such prohibition without invalidating the remaining provisions of the contract. Executed in triplicate, one copy of which was delivered to and retained by the purchaser, this 23d day of May, 1927.

"———————————[Seller Signs.]
"Seller's Signature.
"By ——————
"H. A. Brumfield [Purchaser Signs.]
"Purchaser's Signature.
"By ————
"Centerville, Miss.
"Witnesses: [Sign in Ink]
"Max Herman,
"Witness Signature.
"——————————
"Witness Signature.

"In States where acknowledgment or affidavit is necessary for filing or recording, Notary Public will insert necessary acknowledgment or affidavit on reverse hereof."

The proof introduced on behalf of the complainant is sufficient to sustain the allegation of the bill, and the chancellor found for the complainant and granted relief against said contract, from which decree this appeal is prosecuted.

It will be noted from reading the contract set out that it is not one payable to order or to bearer, and consequently is not a negotiable instrument within the Negotiable Instrument Law. Section 2755, Hemingway's 1927 Code (section 1 of chapter 244, Laws of 1916), defines a negotiable instrument as follows:

"1. An instrument to be negotiable must conform to the following requirements:

" (1) It must be in writing and signed by the maker or drawer.

" (2) Must contain an unconditional promise or order to pay a certain sum in money.

" (3) Must be payable on demand, or at a fixed or determinable future time.

" (4) Must be payable to order or to bearer; and

" (5) Where the instrument is addressed to a drawee,

he must be named or otherwise indicated therein with reasonable certainty.''

Section 2740, Hemingway's 1927 Code (section 4001, Code of 1906), reads as follows:

''All promissory notes, and other writings for the payment of money or other thing, may be assigned by indorsement, whether the same be payable to order or assigns or not, and the assignee or indorsee may maintain such action thereon, in his own name, as the assignor or indorser could have maintained; and in all actions on such assigned promissory note, bill of exchange, or other writing for the payment of money or other thing, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-offs made, had, or possessed against the same previous to notice of assignment in the same manner as though the suit had been brought by the payee; and the assignee or indorsee of any such instrument may maintain an action against the person or persons who may have indorsed the same as in case of inland bills of exchange; but when any debt shall be lost by the negligence or default of an assignee or indorsee, the assignor shall not be liable on the assignment or indorsement. The assignee of a claim for the purchase-money of land may enforce the vendor's lien as the vendor could.''

It will be noted that the Negotiable Instrument Law modifies this last section in notes payable to order, but leaves it unaffected as to instruments not payable to order or bearer, and it is expressly provided therein that the defendant shall be allowed the benefit of all lawful consideration, failure of consideration, payments, discounts, and set-offs made, had, or possessed against the same previous to notice of assignment in the same manner as though the suit had been brought by the payee, and that the assignee or indorsee of any such instrument may maintain an action against the person or persons

who may have indorsed the same, as in the case of inland bills of exchange.

The contract not being negotiable within the meaning of the Negotiable Instrument Law, and the proof showing on the part of the complainant that it was procured by fraud, and the chancellor having found facts from the evidence to sustain the plaintiff's contention, the defense is available both as against the J. W. McNees Motor Company and the General Motors Acceptance Corporation. This case is different from Commercial Credit Company v. Summers, 154 Miss. 501, 122 So. 541. In that case the contract was payable to a named person or order, or to the order of the payee, and such an instrument was held to be within the protection of the Negotiable Instrument Law. In the case of Gidden Motor Company v. Johnston, 124 So. 367, we dealt with the effect of indorsement on the nonnegotiable instrument, and held the indorsement and transfer passed the interest of the person assigning it. In that case the court said:

"It is the contention of appellee, to state the same in short, that the certificate aforesaid is nonnegotiable, and that Mrs. Gidden obtained no further title to the certificate than the indorsee Smith had, which, as appellee contends, was not an absolute, but only a qualified, title, according to the facts already stated.

"It is true that the said certificate is a nonnegotiable instrument, but there are no provisions in it which inhibit an assignment of it. Nonnegotiable instruments which partake of the nature of commercial paper are assignable by indorsement and delivery; and such an indorsement on paper of the general character aforesaid and thereupon its delivery has the legal effect to transfer, and to transfer absolutely, all the right, title, and interest of the indorser therein, although, of course, it does not as to the payer or maker of that paper operate to convert the same into a negotiable instrument."

We are of the opinion that the chancellor accordingly defined the cause, and judgment will be affirmed.

Affirmed.