JONES v. FIRST NAT. BANK OF WEST POINT.

(Division A. May 21, 1934. Suggestion of Error Overruled October 1, 1934.)

[155 So. 173. No. 31096.]

B. H. Loving, of West Point, for appellant.

**McClellan & Tubb**, of West Point, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellee instituted suit in a court of a justice of the peace for one hundred dollars, interest, and attorney's fees, and recovered judgment; whereupon the case was appealed to the circuit court, tried upon an agreed statement of facts before the judge of that court, who rendered a judgment in favor of the appellee, the bank, and J. J. Jones, the appellant, prosecutes an appeal here.

The note sued on herein is in this language:

"$100.00  West Point,  Miss.  Dec. 22, 1930
     Town    State    Date

"On or before the 1st day of January, A. D. 1932, for value received, I promise to pay to the order of

    "Bentley Motor Company, Vendor,

"($100.00) One Hundred & 00/100 Dollars, at their place of business at West Point, Miss. with interest at the rate of six per cent per annum, from date, and a reasonable attorney's fee if suit is commenced to collect this note. The consideration for this note is the sale to ———, Vendee, by said ——— Vendor, of the personal property described in the Contract of Sale indorsed on the back hereof, and Vendee agrees to hold said property in trust solely as bailee for said Vendor and this note is subject to and a part of said contract.

"P. O. Address ———      J. J. Jones

"———            ———."

On the back of the note there was a printed form of a conditional contract of sale, or reservation of title, with the blanks therein unfilled, which was unexecuted. In the body of the contract there was a blank containing five lines, also a blank form of acknowledgment, and a blank form for the filing for record of the instrument.

The defense interposed to the note was, first, that the appellee, the bank, was not a holder in due course for value without notice, because, it is alleged by appellant, the note shows on its face that it was subject to an extrinsic contract. Second, the note sued upon was pledged as collateral security to a note executed by Bentley, the original payee of the note in the suit of the bank, because there was a provision in the note of Bentley to the bank that the collateral held by it was to be sold in case of default therein, and there is no showing that the note here sued on had been sold by the bank.

The material parts of the agreed statement of facts set forth are as follows:

On the date when the note was given, Jones, a druggist

of West Point, purchased from Bentley an automobile, executing the note here in controversy as part of the purchase price therefor. It was agreed between Bentley and Jones, orally, at the time of executing the note and as a part of the sale of the automobile, that this note was to be paid to Bentley by Jones in trade from his drug store, and that it would not be paid in any other manner; and this oral agreement was put in writing and signed by the parties a few days after the execution of the note.

On or about June 15, 1931, Bentley transferred this note, for value, to secure a renewal of a preexisting debt due the bank by him, or rather substituted the note as collateral in place of other collateral for the note due the bank by him. At the time Bentley transferred said note to the bank, he had traded with Jones at his drug store to the amount of about fifty dollars, and afterwards, to the amount of about ten dollars additional. Jones continued to operate his drug store and was at all times ready to comply with his agreement by permitting Bentley to trade out the balance due on the note.

After the acquisition of Jones' note as collateral security for Bentley's debt, the bank immediately notified Jones, in writing, that it held this note; and upon receipt of its notice, Jones promptly notified the bank, in writing, of his agreement with Bentley that he was not to pay the note except in trade.

It was agreed that the testimony of Duggan, the president of the bank, who handled the transaction for the bank with Bentley and acquired the note for it as collateral security, is that he did not remember the conversation had between Bentley and himself, but that the policy of the bank was not to acquire or accept any notes which were not negotiable, and in accordance with said policy of the bank, the note would not have been accepted as collateral from Bentley had he been advised of the agreement between them that the note was to be paid by trading it out in merchandise.

It was further agreed, on April 5, 1932, subsequent to

notice of Jones' defense, that the note which Bentley owed to the bank was renewed by the execution of a new note, the old note having been delivered to him and marked "paid by renewal," and the Jones' note sued on herein having been detached from Bentley's old note and attached to his renewal note; that the note of Bentley's was for the sum of two hundred dollars; that the collateral note of Jones, when received by the bank, contained all the blanks as they now appear thereon.

1. The note in question is in the form of a negotiable instrument, it is in writing; signed by the maker; payable to order at a fixed future time; contains an unconditional promise to pay a certain sum of money; and the payee is named therein. See section 2637, Code 1930.

But it is insisted that the phrase, "and this note is subject to and a part of the contract," referring to an incomplete, unexecuted contract of sale—a printed form on the back of the note—rendered the note nonnegotiable.

It will be observed that the note was indorsed by the payee in blank; that it was delivered to the appellee by the payee as collateral security for his pre-existing debt and as a substitution of collateral; and that thereafter the pre-existing debt was renewed by the execution of a new note and the relinquishment of the old note without any contract between the parties that the collateral note here in suit was affected thereby.

We are of the opinion that the note is complete upon its face, and that the bank became the holder of it in due course, in good faith for value, before it was overdue, and that it had no notice of any infirmity in the instrument or any defect in the title. The blanks in the note refer to the consideration, and in nowise impair the obligation to pay the note according to its tenor and effect. The printed form, or conditional contract of sale, on the back of the note, contains no intimation of a collateral agreement that the note is to be paid in merchandise instead of money, in fact, the contrary would be presumed from an examination of the blank contract found on the

back of the note here involved; and, too, the contract was not extrinsic, but on the back of the note. On its face no contract was executed, thereby leading any party examining it for the purpose of its acquisition to believe that the contract referred to in the note had been entirely abandoned; so that we are of the opinion that the printed form on the back of the note constituted no notice of any infirmity; and the proof is clear that there was no actual notice. The entire paper, note, and contract indicates nothing but a negotiable note, payable to the order of a named party, with a conditional contract of sale attached thereto, unexecuted; and in so far as the face of the paper is concerned and the unfilled blanks, no defect or infirmity is available to the maker in this case. Defenses existing between the original parties to this contract are not available against a bona-fide purchaser, a holder for value, who acquired this note and unexecuted contract of sale before maturity. See Commercial Credit Co. v. Summers, 154 Miss. 501, 122 So. 541.

We think the agreed statement of facts in this case demonstrates that the bank had no actual knowledge of such infirmity or collateral agreement and that its taking the instrument did not amount to bad faith. No fraud is shown. There was no agreement alleged in defense that the payee of this note had agreed not to negotiate it. The defense is merely that the note was to be paid in merchandise. There was no effort, in the execution of the note in this case, to show by the instrument that the note was impressed with, or subject to, any defenses to which the maker thereof would be entitled under the contract. The bank took it as collateral for the payee's pre-existing debt, freed from any condition. Klots Throwing Co. v. Manufacturers' Commercial Co. (C. C. A.), 179 F. 813, 30 L. R. A. (N. S.) 40, is not in point here. In that case it is clear that there was an existing extrinsic contract referred to in the note held to be nonnegotiable, and the payment of the note was dependent upon a condition or contingency. This, the strongest case for appellant's

views, is not controlling, and with reference to the other cases cited by him, we content ourselves by saying that they announce the same rule.

2. The right of the bank to sue in this case is based upon the indorsement of the payee named in the note; and the fact that it was assigned as collateral security for a pre-existing debt and that there was a renewal of the transferee's note, did not affect, in any wise, the right of action or title to the note so vested in the bank as a holder in due course. See First National Bank v. Mc-Grath & Sons Co., 111 Miss. 872, 72 So. 701.

We close this opinion with the general observation that all blanks apparent on the face of this paper were immaterial, and the filling in of the same could not have affected the negotiability of the note or impaired the obligation to pay the money according to the tenor and effect of the note.

Affirmed.