SECURITIES INVESTMENT COMPANY *v.* COHEN

No. 41919 June 12, 1961 131 So. 2d 439

*Cox & Dunn,* Jackson, for appellant.

*Jones & Stratton,* Brookhaven, for appellee.

LEE, P. J.

Securities Investment Company, a corporation, the assignee and holder of both a conditional sales contract, executed by E. E. Smith, d. b. a. Earl Smith Motors, seller, and R. O. Cohen, buyer, retaining title in the seller to the automobile described therein, and the accompanying negotiable promissory note of the buyer, evidencing the unpaid purchase price of the automobile, by its declaration, demanded judgment against R. O. Cohen in the principal sum of $2,327.52, plus legal interest and $581.88 as a reasonable attorney's fee, and that the automobile should be seized, sold and the proceeds applied towards the satisfaction of the indebtedness. Copies of the instruments were attached as exhibits to the declaration. The contract showed the balance of the unpaid purchase price to be $3,336, payable in monthly installments of $111.20 each "as evidence of which installments Buyer has executed to Seller a negotiable promissory note of even date herewith, which note is a separate instrument from this contract even though temporarily attached hereto by perforation or

otherwise.'' The contract further provided that ''Title to said car shall remain in Seller or assigns until said time balance and all amounts now or hereafter due hereunder are fully paid in cash. This contract may be assigned and the aforesaid note negotiated by Seller, or the payments hereunder renewed or extended * * * without passing title of said car to Buyer. Such assignment shall not subject Seller's assignee to any of Seller's obligations, express or implied, hereunder.'' The note, payable to the order of Earl Smith Motors, was in strict conformity to the provisions of the contract.

The plaintiff charged that on October 20, 1959, it became the purchaser in good faith of the note and contract in due course for full value in reliance upon the validity, genuineness and effectiveness of said instruments as a valid obligation of the defendant.

The automobile was seized. The defendant, who was summoned in accordance with law, tendered a forthcoming bond in the sum of $3,000, being double the value of the automobile as fixed by the sheriff, to abide the judgment of the court, and retained possession.

The answer of the defendant admitted the execution of the note and conditional sales contract, but denied that the purpose was to finance any unpaid balance on the purchase price of the automobile, and denied that the plaintiff was a bona fide purchaser for value in due course of the contract and note. By way of an affirmative defense, he charged that the instruments, executed by him, were fraudulently, wrongfully and feloniously obtained from him by Earl Smith Motors, and that said Motor Company could not and did not assign any good title thereto.

To the affirmative defense, the plaintiff answered that the representations of the defendant, on the face of the instruments, showed that he had incurred a valid obligation in the purchase of the automobile; that the plaintiff promptly advised the defendant of its purchase

of the papers; that the defendant made no reply thereto; and that the defendant was estopped to plead any alleged defect in the title to such instruments.

At the conclusion of the evidence, the court refused the plaintiff's requested peremptory instruction. On the contrary, at the request of the defendant, it instructed the jury in effect that, if the defendant did not purchase the automobile on October 17, 1959, and did not deliver the contract as a valid and binding obligation, and that, if Earl Smith Motors fraudulently or feloniously procured the contract and assigned it to the plaintiff without the defendant's knowledge, then the jury should return a verdict for the defendant.

The jury found for the defendant, and, from the judgment entered thereon, the plaintiff appealed.

The record disclosed the following facts: On March 24, 1959, R. O. Cohen purchased a 1959 Plymouth automobile from E. E. Smith, d.b.a. Earl Smith Motors in Brookhaven, Mississippi, under a conditional sales contract and executed his promissory note, payable $50 on the 24th of each month, with the final payment of $1,707 due on September 24, 1959. The Motor Company assigned that contract and note to the State Bank and Trust Company of Brookhaven.

Cohen, who was a bookkeeper by occupation and had worked in that capacity for Earl Smith Motors several years, testified that, on October 17, 1959, he went to the Motor Company in connection with refinancing his existing obligation to the bank. As a consequence, he signed and acknowledged the delivery to Earl Smith Motors of the conditional sales contract for a new 1959 Plymouth automobile, showing a down payment of $530.60, with a balance due of $3,336, covering the same automobile which he had previously purchased on March 24, 1959. At the same time, he also signed a promissory note in that amount to the order of said Motor Company, payable in monthly installments of $111.20 each. This con-

tract and note were executed either in duplicate or triplicate on forms printed on both sides of a single sheet of paper and were left with E. E. Smith. Cohen further testified that he then saw the proper official of the bank and that the bank was willing to renew the papers. He then returned to the Motor Company, on the same day, and so advised Smith. Smith advised him that he did not have the original of the contract and note at that time, but instead gave him a copy of these instruments on which he wrote: "Pd. in full $1,017.29. Earl Smith Motors, by E. E. Smith, owner."; and that Smith said he would tear up the original when he got it. Cohen did nothing further in an effort to obtain the original, but merely instructed Smith to destroy the same when he got it.

Three days later, on October 20, 1959, Earl Smith Motors, for full value, sold and assigned the papers to Securities Investment Company, whose purchase was made in good faith. At that time no part of the indebtedness was due. The instruments were promptly recorded thereafter in the office of the chancery clerk of the county on October 28, 1959.

Following its purchase, the Investment Company sent Cohen a book of coupons to be used in connection with the payment of the monthly installments, and wrote a number of letters to him at his correct address. No replies were received thereto but none of the communications were returned. Cohen would not be definite as to whether he received these communications. However the Company did receive five remittances of $111.20 each for application on this account. In each of the accompanying communications, Earl Smith Motors reported that it had given its receipt for that amount, and asked that the customer be so credited on the Company books, also stating that it acted as the customer's agent in the acceptance of the payments. When no reply had been received from its audit letter, the Company sent

its adjuster to contact Cohen about the account. While stating that he told the adjuster that he did not owe the Company anything and did not make one or two of the answers therein, Cohen admitted that his signature appeared on the statement and that the other information therein was correct.

T. M. Talley, District Manager, testified that, when the plaintiff purchased this paper, it knew nothing of the alleged wrongful act of Smith, or of any infirmity in it; that it never heard of such a condition until June 9, 1960, when Cohen denied that he owed the money, and after Earl Smith Motors had gone out of business on May 27, 1960. On cross-examination, he admitted that Curtis Robinson, a collector of the Company, between April 6, and September 9, 1960, made about five checks of Earl Smith Motors, and, in each instance, reported that this car was in the Motor Company's possession. He also admitted that this collector was "permitted to resign" on account of discrepancies discovered in his dealings with E. E. Smith.

On this point, Cohen testified that, after his original purchase of the automobile, he kept it at his home and never at any time drove it back to the Motor Company to be checked.

The appellee contends that (1) the appellant was not, under the circumstances, a holder in due course; (2) that the suit is based on the theory of a statutory purchase money lien, and the appellee had the right to plead and prove that he did not purchase the automobile in question; and (3) the conditional sales contract was not negotiable and was therefore subject to the defenses made.

Under Section 98, Code of 1942, Recompiled, "Every holder is deemed prima facie to be a holder in due course * * * This prima facie presumption should obviously be applied to the appellant. Undoubtedly it was in truth and in fact a holder in due course, under Section 93 of the Code, unless it had actual knowledge of an infirmi-

ty or defect in the title to these papers, or knowledge of such facts that its action in taking them amounted to bad faith, as provided by Section 100 of the Code. See also Cassedy v. Wells, 162 Miss. 102, 137 So. 472.

If Cohen told the truth, obviously Robinson, in his reports, withheld information from his employer. However, if he was guilty of misfeasance or malfeasance, such conduct benefitted the Motor Company and not his employer. Talley testified positively that the appellant knew nothing of such a situation, if, in fact, it existed. Manifestly the appellant had no actual knowledge of any infirmity or defect.

In Grauman v. Jackson, 225 S. W. 2d 678, an Arkansas case, the court held that a purchaser, under the Uniform Negotiable Instruments Act, must be honest rather than free from negligence in order to be a bona fide purchaser.

In United States v. Skinner, 137 F. Supp. 234, the Court said: "In order to defeat the right of a purchaser of a note to recover it is necessary to either show actual knowledge of the defect or notice of such facts and circumstances as would charge him with actual bad faith in taking the paper without investigating the circumstances."

▆▆ ▆ The rights of a holder of a note are to be determined by the simple test of honesty and good faith and not by a speculative issue as to his diligence or negligence. Sherwood Distilling Company v. Peoples First National Bank and Trust Company, 193 F. 2d 649.

In Carnation v. Pridgen, 67 S. E. 2d 485, a Georgia case, it was held that the transferee of a negotiable instrument for value before maturity is a bona fide holder in due course provided he is not a party to any further illegality affecting the instrument, and that he has no actual knowledge of any infirmity, defect or other facts so that the action in taking the instrument amounts to bad faith.

In First National Bank of Springfield v. Di Taranto, 75 A. 2d 907, a New Jersey case, it was held that where a note was made by the defendant to a heating company and purchased by the bank, to constitute notice to the bank of a defect in the title of the heating company, the bank must have had actual knowledge of the infirmity or defect, or knowledge of such facts that would show that the bank's actions amounted to bad faith.

In Manufacturers and Traders Trust Company v. Sapowitch, 72 N. E. 2d. 166, a New York case, it was held that the purchaser of commercial paper for full value before maturity without notice of any equities between the original parties or any defect of title is deemed a bona fide holder and is not bound at his peril to be upon the alert for circumstances which might excite suspicions or wary vigilance, nor does he owe to the party who puts negotiable paper afloat the duty of active inquiry to avert the imputation of bad faith.

Assuming that the automobile was not in the place of business of Earl Emith Motors during the time that the appellant's collector was reporting that it was situated there, it must be remembered that the last inspection was more than a month prior to October 17, 1959. Consequently there is no sound basis upon which it can be said that the appellant's knowledge in that connection constituted bad faith by it in the purchase of the papers.

Additionally, the facts, next to be stated, are even more potent and decisive. The appellee's story is most unusual. On October 17, 1959, when he thought it would be necessary to refinance his original paper, dated March 24, 1959, and held by the State Bank and Trust Company of Brookhaven, Cohen executed the note and contract, involved in this case, in which he reported that he had purchased a new Plymouth automobile on which he had made a down payment of $530.60, leaving his total obligation thereon in the amount of $3,336, when the truth was that he had not purchased an automobile,

either new or otherwise. Neither had he made a down payment. Besides the total amount then due on this used automobile, purchased on March 24, 1959, was only $1,707. He acknowledged before a notary public that he signed and delivered the sales contract, together with the note, and placed them in Smith's hands before he even inquired of the bank as to whether it would refinance it. Furthermore, he said that, after the bank agreed to refinance it, he went back to the Motor Company and Smith told him that he was unable to locate the original of the papers but would give him a copy of the same with the notation as to payment thereon. Without further ado, Cohen went away, merely telling Smith that, if he ever located the original, to destroy it. It must be remembered also that this man was a bookkeeper; that he had worked two or three years for Smith in that capacity; that he was therefore familiar with matters of that kind; and that he knew that only the originals of finance papers are discounted. Credulity must approach naivete if the appellee is to be disassociated from a deliberate scheme to defraud the appellant. But, if it might be said that the apellee was not such a participant, at any rate, he was the one who put the paper in commerce and let it remain there. Except for his act in so doing, the appellant would have suffered no harm.

In Associates Discount Corporation v. Slayton, 226 Miss. 778, 85 So. 2d 199, the appellees there, instead of demanding cash or its equivalent before delivery of the automobiles to which they retained title until fully paid for, took instead drafts, knowing that the same would have to be presented and accepted before cash could be realized; and that payment could therefore be refused at the time. On that account, it was held that they could not prevail against an encumbrancer or purchaser in due course from the dealer for value and without notice, the opinion saying: "Of course this is but an application of the equitable doctrine that, where one of two equally

innocent persons must suffer, the one whose act enabled the wrongdoer to commit the wrong must suffer the loss.'' See also 8 Am. Jur., Bills and Notes, Section 591, p. 297, where it is said that: *''Fraud as a defense may be precluded by estoppel,* waiver, *the maxim as to loss between innocent parties occasioned by the act of a third person,* or affirmance and ratification.'' (Emphasis supplied.)

In 10 C. J. S., Bills and Notes, Section 485, pp. 1048-9, it is recognized that the principles of estoppel ordinarily apply to setting up defenses to actions on negotiable instruments and it is said that: ''* * * accordingly a party to such an instrument may be estopped from asserting defenses which might otherwise have been available, but which, in the light of his previous acts or representations, would be unfair, fraudulent, or prejudicial to plaintiff * * *''

 Appellee's acts and conduct evince such gross negligence that, as between him and the appellant, he alone must be held blamable and responsible for the appellant's loss.

 The appellant, as assignee, in this suit, sought to obtain judgment on the note which evidenced the debt of the appellee. It held title to the automobile as long as any of the purchase price thereof remained unpaid. Associates Discount Corporation v. Slayton, 226 Miss. 794, 86 So. 2d 509. As an incident to its purchase of the note, it acquired the right to resort to the automobile, which was security for the payment of the debt. See Dederick v. Wolfe, 68 Miss. 500, 9 So. 350; Commercial Credit Company v. Summers, 154 Miss. 501, 122 So. 541. The difference in the result between those cases and Clark, Hood & Company v. Erwin, 72 Miss. 926, 18 So. 419, arose out of a difference in procedure.

 The appellant had the right to demand a judgment on the note and have the proceeds from the sale of the automobile applied toward the satisfaction of the

judgment. Such was the kind and nature of the suit, and the appellee's contentions (2) and (3) are therefore untenable.

 From which it follows that it was error to submit this cause to a jury. The appellant's requested peremptory instruction to find for it should have been granted. The court would have thereupon awarded judgment against the defendant for the unpaid balance of $2,327, due on the note, with 6% interest thereon from the date thereof, an attorney's fee in the sum of 15% or $349.05, as agreed upon by the parties, and judgment additionally against the sureties on the forthcoming bond, by which the defendant replevied the automobile, in the sum of $1,500, as valued by the sheriff at the time of the levy of the writ.

Consequently the judgment of the trial court is reversed, and judgment will be entered here for the appellant, making the awards which the trial court should have granted, as stated in the preceding paragraph.

Reversed and judgment here for the appellant.

*Kyle, Ethridge, Gillespie* and *Rodgers, JJ.,* concur.