JONES, Justice:
Appellee sued William G. Nash and Etta Mae Nash, his wife, appellants, in the County Court of Jackson County, Mississippi, on a promissory note executed March 10, 1964, for the sum of $527.40, plus interest, payable to Colonial Industries, Incorporated, and assigned to appellee. From a judgment in favor of appellee in the county court which was affirmed on appeal to the circuit court, the case comes here. We can do nothing but affirm.
The defense was that if the alleged note was signed by defendants, it was obtained by fraud and trickery, and that it had been given for home improvement, which had not been done, as we understand it. There was also some claim that there was a first deed of trust on the property which was foreclosed by the holder thereof and that the plaintiff did not elect to secure its interest in said property by purchase of the first deed of trust and it was, therefore, barred from any recovery from the defendant.
As to the last defense mentioned, we do not deem it well taken. Colonial Industries, Inc., had secured the note as consideration for a contract to perform certain home improvement work.
An attempt was made on the trial of the case to say that defendants “so far as they knew” did not sign the note. But a reading of all the evidence does not support a claim that they did not sign it; furthermore, there was no plea of non est factum filed as required by Mississippi Code of 1942 section 1750.
The note bore upon its back the following assignment or endorsement:
“ENDORSEMENT
PAY TO THE ORDER OF:
HOMEOWNERS MORTGAGE CORP.
WITHOUT RECOURSE
‘Except that the undersigned endorser warrants that the undersigned has furnished and installed all articles and materials and has fully completed all work which constitutes the consideration for which the note was executed and delivered by the maker(s).’
Colonial Industries, Inc.
(Dealer or Contractor)
By s/R Proctor
President
WITHOUT RECOURSE
UNITED CREDIT PLAN, INC.
By-”
*213 The contract to perform the work was dated March 7, 1964, and the note mentioned was dated March 10, 1964.
The appellee claimed to be a holder in due course (and introduced proof to so show) in accordance with Mississippi Code of 1942 section 93. In order to make the charge of fraud applicable to appellee and thereby defeat its rights to recover, it would be necessary to show that it participated therein or had actual knowledge thereof.
Appellant contends that the endorsement heretofore copied being “without recourse,” and also being a warranty as to the performance of the contract, was sufficient to put the appellee on notice. However, section 79 of the Mississippi Code of 1942 provided that a qualified endorsement may be made by adding to the endorser’s signature the words “without recourse” and that such an endorsement does not impair the negotiable character of the instrument.
Mississippi Code of 1942 section 100 provides that to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.
In this instance the appellee, while accepting the note without recourse, had a warranty that the work for which it was the consideration, had been performed, and there is no proof that appellee had any notice to the contrary.
Appellee’s proof showed that they purchased the note for valuable consideration prior to its maturity without notice of any defect.
In Securities Investment Co. v. Cohen, 241 Miss. 549, 131 So.2d 439 (1961), it was held by this Court that the rights of a holder of a note are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. In that case, our Court cited with approval cases from other states in which it was held that the person shown to be a bona fide holder must not have had actual notice of the infirmity or defect or knowledge of such facts that would show his actions amounted to bad faith.
Also cited were cases holding that the purchaser of commercial paper for value before maturity without notice of any equities between the original parties or any defect of title is deemed a bona fide holder and is not bound at his peril to be upon the alert for circumstances which might excite suspicious or wary vigilance, nor does he owe to the party who puts negotiable paper afloat the duty of active inquiry to avert the imputation of bad faith.
In Smith v. Ellis, 142 Miss. 444, 107 So. 669 (1926), Ellis was the bona fide holder. We think that case states the law of this case when it says:
“The evidence shows without conflict that appellee had no part in the fraud perpetrated by Brecker in procuring the note in question, and it fails to show that appellee had any knowledge of such fraud when he purchased the note, or of any facts that would have reasonably led him, if pursued, to a knowledge thereof. We think, therefore, that appellant’s first contention is not well founded.
“Considering now appellant’s second proposition: The evidence does show, as contended by appellant, that appellee had knowledge of the collateral contract which was executed by Brecker at the same time appellant executed the note involved; in fact, appellee admitted that fact as a witness in his own behalf. The evidence further fairly tends to show that appellee had knowledge of the promise made to appellant by Brecker that the former would not be called on to pay the note, because before its due date appellant would have acquired title to the land and sold the timber thereon to the *214 mill company for at least a sufficient sum to pay the note.
“The question therefore is whether knowledge, by the holder of a note negotiable in form, that the note was given in consideration of an executory agreement by the payee, will deprive the holder of his character as a holder in due course. Putting the question differently, Does the holder, with knowledge of such an execu-tory contract, take the note subject to the provisions of the contract ? The authorities seem to be in accord in answering this question in the negative. Knowledge of the consideration of a bill or note is not notice of a subsequent failure of the consideration. Knowledge of the holder that the note was given in consideration of an executory contract by the payee does not deprive the holder of his character as a holder in due course, because of the fact that the payee fails to perform the contract, provided the holder had no knowledge of the breach prior to his acquisition of the instrument. And, where the breach of the collateral contract takes place after the holder has acquired the instrument for a greater reason, the holder is protected. There is a discussion of this question in 8 C.J., at pages 509 and 510, § 718, where the cases bearing on the question are collated by the author.
“When appellant negotiated the note, thereby putting it in circulation, he took the chances on Brecker complying with his executory contract. If the law were otherwise, a very large proportion of bills and notes would be rendered practically valueless in the commercial world, for it is a matter of common knowledge that a considerable part of commercial paper in circulation has for its consideration executory agreements by the payees. Should the maker, who dealt with the payee and trusted him, suffer the loss, or the holder in due course, who often has had no dealings with the payee and does not even know him? We think the former, upon the ground of justice, as well as moral right.” 142 Miss, at 454— 456, 107 So. 671-672.
The case is affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, BRADY, and SMITH, JT., concur.